UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICOLE GRIMMER,<br>                Plaintiff,<br><br>      v.<br><br>COSTCO WHOLESALE CORP.,<br>                Defendant. | Case No.  2:13-cv-00075-REB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court is Defendant's Motion to Dismiss (Dkt. 3) and Motion to Strike (Dkt. 14). Having considered the briefing and counsels' oral arguments, and otherwise being fully advised, this motion to dismiss is granted for the reasons explained below.

## INTRODUCTION

Plaintiff Nicole Grimmer ("Grimmer") believes that her brother Patrick Curtis should not have been fired by Defendant Costco on November 27, 2010, for allegedly being intoxicated at work. She contends that she was damaged as a result of that firing, allegedly because it led to Curtis discontinuing premium payments on a life insurance policy of which she was a beneficiary.[1] Curtis stopped paying premiums about January 1,

---

[1] Put another way, Grimmer argues that she would have been the beneficiary of Curtis's life insurance policy "but for the termination" of the policy as a result of Curtis's

**MEMORANDUM DECISION & ORDER - 1**

2012, approximately 13 months after his firing on November 27, 2010.  Compl. ¶¶ 7-11, 16, 22, 28.  Approximately eight months later, and almost two years after he lost his job at Costco, Curtis passed away.  *Id.* at ¶ 2.

Grimmer argues that Costco did not follow its own policy for handling suspected workplace intoxication when firing Curtis and that, had Costco not fired Curtis, the life insurance policy would have remained in place at the time of his death.  Grimmer alleges she was the named beneficiary on that policy.  Compl. ¶ 27, 33.  Her claim for relief alleges "wrongful interference with prospective economic advantage".  Compl., p. 7.  Costco has moved to dismiss, arguing that Grimmer's Complaint fails to state a claim for relief.

## MOTION TO STRIKE

The Court is first faced with a preliminary issue – whether the Court must convert the motion into one for summary judgment because of the submission of evidence from outside the pleading record, or instead should strike Grimmer's affidavits in support of her opposition brief.  Costco argues that the materials should be stricken because they were not referenced in the Complaint and because "basic fairness requires that the motion to dismiss not be converted to one for summary judgment."  Mot. Strike, p. 2 (Dkt. 14-1).

---

inability to afford the premium payments.  Pl.'s Mem., p. 7 (Dkt. 10).

**MEMORANDUM DECISION & ORDER - 2**

**A.     Standard**

When ruling on a motion to dismiss, the court must normally convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56 if the court considers evidence outside of the pleadings.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment.  *Id.* at 908.

"[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).  Federal Rule of Evidence 201 also allows for the court to take judicial notice of a fact that is not subject to reasonable dispute where, as here, the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b) (2).  *See also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *Allen v. United Financial Mortg. Corp.*, 660 F.Supp.2d 1089, 1093 (N.D.Cal. 2009) (proper to take judicial notice of a purchase and assumption agreement that is a matter of public record when deciding a motion to dismiss).

**MEMORANDUM DECISION & ORDER - 3**

B.   Discussion

Grimmer's Affidavit attaches several documents, including an "Employee Agreement" pertaining to Curtis, through which (Grimmer argues) Costco provided Curtis various benefits of employment, including a life insurance policy paid for by Costco. Compl., ¶ 6 (Dkt. 1-1). She contends that the Employment Agreement required a "confirmation test" before an employee could be terminated for alcohol use on the job. *Id.* at p.2, ¶ 8. A second appended document – the Costco Drug and Alcohol Free Workplace Policy – is not specifically referred to in her Complaint, but Grimmer does discuss it in the context of her claim.

At the hearing on these motions, the Court said it likely would consider the Employee Agreement and the Workplace Policy document because, even though not attached to the Complaint, the two documents were an intrinsic part of the factual background related to Curtis's employment at Costco, and there was no genuine dispute as to their authenticity. The other documents appended to the Grimmer Affidavit, however, are not appropriate matters for the record of a Rule 12(b) motion. Accordingly, the motion to strike is granted as to those documents, and they will not be considered by the Court.

## MOTION TO DISMISS

A.   Standard for Rule 12(b)(6) Motion

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242

(9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In light of *Twombly* and *Iqbal*, the Ninth Circuit summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990), or where the allegations on their face "show that relief is barred for some legal reason." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the pleading under attack. *Iqbal*, 556 U.S. at 663. A court is not, however, "required to accept as true allegations that are merely conclusory,

**MEMORANDUM DECISION & ORDER - 5**

unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B.    Discussion**

Although Idaho courts interpret interference with contract and interference with economic expectancy as "nearly identical" torts, *Khurana v. North Cent. Dist. Health Dep't*, 2012 WL 1288746, *10 (D.Idaho 2012) (quoting *Highland Enterprises, Inc. v. Barker*, 986 P.2d 996, 1004 (Idaho 1999)), the tort pled in this case does not require Grimmer to be a party to the Employee Agreement through which Curtis obtained his life insurance benefit.[2]  Grimmer's counsel confirmed at the hearing, and in his response brief, that Grimmer raises only a claim for wrongful interference with economic advantage.  *See* Pl.'s Mem., p. 3 (Dkt. 10); *compare* Def.'s Mem., pp. 6-7 (Dkt. 3-1).

In order to proceed on that claim, Grimmer must sufficiently allege the following elements:

> (1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Zoellner v. St. Luke's Reg'l Med. Ctr.*, No. 1:11-cv00382-EJL, 2013 WL 1314079 (D. Idaho Mar. 31, 2013) (citation and internal quotation marks omitted).  The elements, and

---

[2] *In re King*, 403 B.R. 86, 93-95 (Bkrtcy. D.Idaho 2009) ("Though similar to the tort of interference with contract, [interference with economic expectancy] does not require the existence of a contract between the plaintiff and a third party.").

**MEMORANDUM DECISION & ORDER - 6**

the challenges raised to each, will be discussed below as needed in order to decide the motion.

*(1) the existence of a valid economic expectancy*

Grimmer argues that, as the sole beneficiary of Curtis's life insurance policy, she had a valid economic expectancy to the proceeds of such a policy upon Curtis's death. Pl.'s Mem., p. 4 (Dkt. 10). She contends that "but for the wrongful interference" of Costco (presumably in terminating Curtis's employment), she would have received the cash proceeds of that life insurance policy. *Id.* Costco argues that her status in that regard is too attenuated, and subject to change, to permit her to plausibly argue that such an expectancy exists. Nonetheless, in the template of a Rule 12(b) motion, the allegation that she has an economic expectancy in a life insurance policy of which she had been the sole beneficiary at the time the policy lapsed, is not beyond the realm of plausibility, and Costco's argument as directed to this element is not persuasive. The Court reaches that conclusion even recognizing that Curtis could have changed his beneficiary at any time.[3] He did not do so before the policy lapsed for non-payment, and the prospect of a changed beneficiary is always a possibility, particularly in regard to a life insurance contract, because of its nature.[4] But, such a change did not occur here, nor is there any evidence

---

[3] Indeed, a change of beneficiary can occur even "without complete compliance with the provisions of the policy regarding notice and endorsement." *IDS Life Ins. Co. v. Estate of Groshong,* 736 P.2d 1301, 1303 (Idaho 1987).

[4] Term life insurance policies are essentially "a series of unilateral contracts, each beginning with the payment of a premium for a specified period . . . and terminating] at the expiration of that . . . period." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 206 P.3d 481, 489 (Idaho 2009) (alterations in original) (citation and

**MEMORANDUM DECISION & ORDER - 7**

that Curtis had ever named anyone other than his sister as the beneficiary of the insurance policy. Hence, the allegations upon this particular element of the claim rise above the level of speculation. *See Bell*, 550 U.S. at 555.

      (*2) knowledge of the expectancy on the part of the interferer*

As to the second element, Grimmer argues that Costco had knowledge of her economic expectancy because it sent Curtis a letter notifying him that his life insurance policy was "portable."[5] Pl.'s Mem., p. 5 (Dkt. 10). That letter informed Curtis of how he could continue his benefits after his employment with Costco ended, which he did. (Curtis paid the necessary premiums to keep the life insurance policy in place for another 13 months after he was terminated.)

The "you can take this with you" letter sent to Curtis is apparently of a sort sent as a matter of course to any former employee contemporaneously to their separation from employment. It is not plausible to suggest or infer from the fact of such a mailing that there was some sort of special inquiry at Costco as to whom Curtis had named as a beneficiary, or even that any such inquiry was necessary, in order to be able to notify Curtis of his rights to keep the policy in force. Hence, the letter cannot serve as adequate pleading fodder that Costco knew *Grimmer* had an expectancy of benefits. Such a

---

internal quotation marks omitted).

    [5] This letter may actually have come from Unum (the actual insurer handling the continuation of coverage issues).

**MEMORANDUM DECISION & ORDER - 8**

premise suggests that an employer had some reason to monitor on a regular basis who its employees had named as beneficiaries on their life insurance policies, and to monitor on a regular basis whether there had been a change to such designations.  There is no plausible allegation put before the Court here that Costco ever engaged in such scrutiny of the details of insurance contracts between its employees (or former employees) and their life insurance company, nor is there any common-sense reason to think that an employer would have any reason whatsoever to track and follow such information, other than what might be necessary in the ordinary handling and processing of the information needed and required by the insurance company of the employee insured.

In assessing the allegations and argument put forward by Grimmer on this element, the Court is mindful that the plaintiff need not prove "actual knowledge" where facts exist "which would lead a reasonable person to believe that such [valid economic expectancy] interest exists."  *Highland Enter., Inc. v. Barker*, 986 P.2d 996, 1004 (citations and internal quotation marks omitted).  But, for the reasons described above, such facts simply do not exist on this record.  If Costco is assumed to have known of Grimmer's beneficiary status at the time Curtis was fired, there is no plausible basis to believe that simply because Curtis had a life insurance policy, Costco should have known that terminating Curtis's employment would lead him to eventually stop paying his insurance premium 13 months later, and then to anticipate his untimely death eight months later on. Pl.'s Mem., p. 4 (Dkt. 10).  Further, Curtis could have continued to pay the premiums

**MEMORANDUM DECISION & ORDER - 9**

from other funds (and, as the record shows, did so for a full year), or he could have chosen to stop paying the premiums earlier on.

*(3) intentional interference inducing termination of the expectancy*

With regard to this third element, Grimmer alleges that the inability of Curtis to pay his life insurance premium "was a reasonable consequence of and incidental to Costco's" termination of Curtis, and therefore the interference that terminated Grimmer's economic expectancy was "intentional". Pl.'s Mem., p. 6 (Dkt. 10). Under Idaho substantive law, such interference can be "intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Bank of Commerce v. Jefferson Enters., LLC*, 303 P.3d 183, 191 (Idaho 2013) (quoting *Highland Enter., Inc. v. Barker*, 986 P.2d 996, 1006 (Idaho 1999)). Further, "intent can be shown even if the interference is incidental to the actor's intended purpose and desire but known to him to be a necessary consequence of his action." *Id.* (citation and internal quotation marks omitted). In other words, "culpable intent may be inferred from conduct *substantially certain* to interfere with the prospective economic relationship." *Id.* (emphasis added).

Even under the minimal pleading standards needed to withstand a motion to dismiss, Grimmer cannot demonstrate sufficient facts to create a plausible claim upon this element. She must plead facts that Costco intended to interfere with her inherently uncertain claim to life insurance proceeds from a policy issued on her brother's life. Even if she can reasonably contend that the alleged "interference" with her economic

**MEMORANDUM DECISION & ORDER - 10**

expectancy was "incidental" to Costco's decision to terminate her brother's employment, she offers no plausible facts to suggest such an interference was known to Costco to be a "necessary consequence" of that decision, and "substantially certain" to result in interference with that interest.

Grimmer's alleged facts rest upon matters inherently subject to vagary and uncertainty, such that the basic factual underpinnings of her argument are far from "substantially certain." She assumes that, had Curtis remained employed, he would have kept her as his sole beneficiary. She assumes that the life insurance benefits that were an incident of his employment would have remained unchanged. She assumes that Curtis would not have sought other employment, or otherwise would not have left employment with Costco on his own decision. She assumes that Costco would not have terminated Curtis' employment for some other reason, even if only a layoff, at some other time. Additionally, Curtis could have obtained another job after his Costco employment ended and maintained his life insurance policy. Curtis' termination did not immediately result in the loss of his life insurance policy; rather, it was only 13 months later that Curtis stopped paying for that benefit, and another eight months before he passed away. All of these possibilities make it unreasonable to infer, as Grimmer does, that Costco's decision to terminate Curtis' employment was intended to result in her not obtaining life insurance benefits upon Curtis' untimely death.

This is not a situation like that in *Highland Enterprises*, where the plaintiff had a contract to construct forest roadways "instrumental in the harvesting and sale of timber"

**MEMORANDUM DECISION & ORDER - 11**

and the court found that the defendant [Earth First members] had "interfered with [Highland's work] by spiking trees, damaging construction equipment, placing obstacles with protruding nails in the roadway, taking survey stakes, and piling slash in the roadway." *In re King*, 403 B.R. 86, 93 -95 (Bkrtcy.D.Idaho 2009) (describing *Highland Enterprises, Inc. v. Barker*, 986 P.2d 996, 1002 (Idaho 1999)).  On those facts, the court explained that it was "reasonable to infer" from the evidence presented that "the conduct was substantially certain to interfere with [Highland's] economic advantage" and reasonable to conclude from the Earth First members' activities that, "even if they intended only to harm the Forest Service and preserve the Cove/Mallard roadless area, a necessary consequence of their actions would be that those constructing the roads [i.e., Highland] would suffer financially." *Highland Enterprises*, 986 P.2d at 1006-07.

   Although it may be reasonable to infer from Grimmer's allegations that Costco could have known Curtis had a life insurance policy that named a beneficiary, and that Curtis might choose to not continue that "portable" policy if Costco terminated his employment, it does not reasonably follow (to the measure of "substantially certain") that a "necessary consequence" of firing Curtis would be his decision 13 months later to stop paying his policy premiums, and for his death to occur eight months after that.

   Instead, this case involves facts more like those in the *Bank of Commerce* case, involving facts which, unlike the interference in *Highland Enterprises*, did not involve "an act of sabotage or mischief." *Bank of Commerce*, 303 P.3d at 192.  There, the court upheld a decision that the bank's action in presenting the plaintiff with financing terms it

**MEMORANDUM DECISION & ORDER - 12**

preferred, which the plaintiff accepted, did not amount to intentional interference or "lead to an inference that the bank knew [the plaintiff] would suffer financially." *Id.* Such facts gave "no indication [the] bank had some nefarious intent to cause injury to [the plaintiff] or to cause [his project] to fail by extending or proposing" financing terms more favorable to the bank. *Id.*

Similarly here, there is no plausible indication that Costco desired to bring about any interference with Grimmer's expectation to receive insurance policy benefits or intended to cause *Grimmer* any financial harm. To the contrary, Costco provided Curtis with notice that his life insurance policy was portable and included instructions for maintaining that policy. And, Curtis chose to maintain that policy for a significant length of time.

*(4) the interference was wrongful by some measure
beyond the fact of the interference itself*

For the same reasons described above, not only has Grimmer failed to sufficiently allege intentional interference on the part of Costco, but also none of the allegations rises to the level of the interference being "wrongful by some measure beyond the fact of the interference itself", which is the fourth element required for an intentional interference claim. *Commercial Ventures, Inv. v. Rex M. & Lynn Lea Family Trust*, 177 P.3d 955, 964 (Idaho 2008). "Wrongful means include conduct in violation of: (1) a statute or other regulation; (2) 'a recognized rule of common law, such as violence, threats of intimidation, deceit[,] misrepresentation, bribery, or disparaging falsehood', . . . or (3) 'an

**MEMORANDUM DECISION & ORDER - 13**

established standard of trade or profession.'" *Quality Resource & Serv., Inc. v. Idaho Power Co.*, 706 F.Supp.2d 1088, 1099 (D.Idaho 2010) (internal citations omitted).

As to the "wrongful" interference element, Grimmer alleges that Costco's "interference" with her "prospective economic advantage occurred as a result of an improper and wrongful termination" of Curtis. Pl.'s Mem., p. 6 (Dkt. 10). Grimmer further alleges that Costco did not follow its policy to perform a screening test and a confirmation test for alcohol, nor did a technician advise Costco of the test results before it terminated Curtis. *Id.* at p. 7. Grimmer sums up Costco's interference as failing "to ever establish what were the results of the . . . alcohol test," to subject Curtis to termination.[6] *Id.* Perhaps there is a plausible claim to be made that Costo wrongfully terminated Curtis's employment, as Grimmer alleges. But the allegations there are wide of the mark that Grimmer must find, as there is no plausible allegation that would connect Costco to any wrongful conduct directed at Grimmer or to any wrongful action pointed at the life insurance policy from which Grimmer expected to receive an economic benefit. Simply put, the circumstances surrounding Costco's termination of Curtis are too

---

[6] Although Grimmer is not bringing a direct breach of contract claim, to the extent she raises an argument that attempts to make an end run around Idaho state precedents— providing that "only a party to a contract may assert a claim for breach of the covenant of good faith and fair dealing," and "[e]ven then, one can maintain a claim for breach of the covenant only when he or she is denied the right to the benefits of the agreement [the parties] entered into", *Noak v. Idaho Dep't of Corr.*, 271 P.3d 703, 707 (Idaho 2012), — those arguments are not persuasive.

**MEMORANDUM DECISION & ORDER - 14**

attenuated to suffice as wrongful conduct for an *intentional* interference claim by Grimmer.

*(5) resulting damage to the plaintiff whose expectancy has been disrupted*

Finally, for all of the reasons described above, even if Grimmer can plausibly allege the fact of damage from the fact of not receiving life insurance proceeds because the policy was no longer in force at the time of Curtis' death, such damages cannot plausibly be connected to Costco's termination of Curtis. There is simply no plausible causation allegation that can be drawn.

**C.    Conclusion**

Costco's termination of Curtis's employment does not provide a reasonable basis for inferring that it was substantially certain that termination would interfere with Grimmer's economic expectancy of a payout to her as beneficiary of her brother's life insurance policy. Grimmer's allegations are simply too remote, in terms of time elapsed and persons involved, to state a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). Accordingly, Costco's motion to dismiss is granted.

## ORDER

IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss (Dkt. 3) is GRANTED. Because amendment would be futile, Plaintiff's oral motion to file an amended complaint is denied.

2. Defendant's Motion to Strike (Dkt. 14) is GRANTED, in part, and DENIED, in part, as set forth above and in the Court's oral comments at the hearing of this matter.

DATED: **September 27, 2013**.

Honorable Ronald E. Bush
U. S. Magistrate Judge